UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-CV-80391-RLR

KEITH TAIG, individually, and on behalf of
others similarly situated,

    Plaintiffs,

v.

CITY OF VERO BEACH, CHIEF DAVID
CURREY in his individual capacity, CAPTAIN
KEVIN MARTIN (RETIRED) in his individual
capacity, LIEUTENANT JOHN PEDERSEN in
his individual capacity, DETECTIVE PHIL
HUDDY in his individual capacity,
DETECTIVE SEAN CROWLEY in his
individual capacity, and DETECTIVE MIKE
GASBARRINI in his individual capacity,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** comes before the Court on two Motions to Dismiss, one filed by the City of Vero Beach ("Vero Beach") and the other filed by Chief David Currey, Captain Kevin Martin, Lieutenant John Pedersen, Detective Phil Huddy, Detective Sean Crowley, and Detective Mike Gasbarrini ("Individual Defendants"). DE 76; DE 78. The Court held a hearing on the Motions on January 18, 2022 ("Hearing"). The Court has carefully considered the Motions, Plaintiff Keith Taig's Responses [DE 90; DE 92], the Individual Defendants' Reply [DE 93], the arguments made during the Hearing, and the record, and is otherwise fully advised in the premises. For the reasons given below, Vero Beach's Motion to Dismiss is **GRANTED**. The Individual Defendants' Motion to Dismiss is **DENIED IN PART AND CONVERTED IN PART TO A MOTION FOR SUMMARY JUDGMENT**.

### I. Taig's Factual Allegations

This lawsuit stems from the Vero Beach Police Department's ("VBPD") investigation of East Spa massage parlor ("East Spa"). Members of the VBPD began to investigate East Spa in June 2018 for alleged prostitution activity. DE 72 ¶¶ 24-36. In November 2018, Detective Sean Crowley submitted an "Affidavit for Surreptitious Entry and Installation of Electronic Surveillance Camera" to a Florida Circuit Court Judge. *Id.* ¶ 49; *id.* at 35-50. Detective Crowley averred that, based on surveillance, undercover operations, trash pulls, and statements by customers of East Spa, he believed that a prostitution organization was being operated at the premises. *Id.* ¶ 51.

The Circuit Court Judge issued an "Order for Surreptitious Entry and Installation of Electronic Surveillance Camera" on November 27, finding probable cause to believe that prostitution was being performed at East Spa. *Id.* ¶ 54; *id.* at 52-53. The Order permitted law enforcement to enter East Spa, install video surveillance cameras in the premises, and monitor the cameras for no longer than 30 days. *Id.* ¶ 54; *id.* at 53. The Order stated,

> While monitoring the premises to be searched, the executing officers shall take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit. The officers shall also make efforts to minimize the disclosure of this surveillance operation to only those sworn law enforcement officers pertinent and relevant to this surreptitious investigation . . . .

*Id.* ¶ 54; *id.* at 53. On November 28, the VBPD and the United States Department of Homeland Security installed cameras in East Spa that did not have audio capability or the ability to be switched on or off. *Id.* ¶¶ 55-56.

In December 2018, Detective Crowley submitted a second "Affidavit for Surreptitious Entry and Installation of Electronic Surveillance Camera" to a different Florida Circuit Court Judge. *Id.* ¶ 58; *id.* at 55-72. Detective Crowley averred that, between November and December, he had observed the performance of approximately 100 sex acts for money, and he sought

authorization for an additional 30 days of video surveillance to "identify the organizational structure of the criminal enterprise" at East Spa, investigate suspected racketeering activity, and "identify and arrest subjects involved in prostitution." *Id.* ¶¶ 59, 61; *id.* at 66, 70-71.

The second Circuit Court Judge found probable cause to believe that prostitution was being performed at East Spa and issued an "Order for Surreptitious Entry and Installation of Electronic Surveillance Camera" on December 28. *Id.* ¶ 68; *id.* at 74-75.  As with the first Order, the second Order permitted law enforcement to enter East Spa, install video surveillance cameras in the premises, and monitor the cameras for no longer than 30 days, and the Order included the same minimization language as had the first Order. *Id.* ¶ 68; DE 72 at 75.

Around January 11, 2019, the Office of the State Attorney instructed the VBPD to stop recording sex acts and to shift the focus of the investigation to human trafficking activity. *Id.* ¶ 70. Nevertheless, the cameras continued to record for the remainder of the second 30-day period. *Id.* ¶ 71.  The installed cameras recorded 24 hours a day, 7 days a week, for 60 days. *Id.* ¶¶ 57, 64, 82.  Arrest warrants subsequently were issued for various East Spa customers for solicitation of prostitution. *Id.* ¶ 75.  In addition, the VBPD held a press conference during which the VBPD named customers under investigation and made their photographs publicly available. *Id.* ¶ 76.

Numerous individuals charged with solicitation of prostitution moved to suppress the surveillance videos. *Id.* ¶ 78.  A Florida County Court Judge granted the motion to suppress, and the Florida District Court of Appeal affirmed. *Id.* ¶ 96; *id.* at 296-303; *State v. Kraft*, 301 So. 3d 981 (Fla. 4th Dist. Ct. App. 2020).  The appellate court first held that the individuals had standing to raise a challenge under the Fourth Amendment because they had both a subjective and an objectively reasonable expectation of privacy in the massage parlor rooms. *Kraft*, 301 So. 3d at 993-94 ("The surveillance took place in a professional private setting where clients are expected

to partially or fully disrobe. The spa owners and their employees also had a reasonable right to expect that the interactions with nude or partially nude clients in the massage rooms would not be exposed to the public. As soon as the door to the massage room was closed, they had a reasonable expectation of privacy."). The appellate court further held that warrants permitting video surveillance should be "sufficiently precise so as to minimize the recording of activities not related to the crimes under investigation." *Id.* at 995 (emphasis and quotation omitted). The appellate court concluded that the November and December 2018 Circuit Court Orders "failed to contain sufficient minimization guidelines" and that law enforcement "did not sufficiently minimize the video recording of innocent spa goers receiving lawful massages." *Id.* at 995-96 ("The warrants at issue did not set forth any specific written parameters to minimize the recording of innocent massage seekers, and law enforcement did not actually employ sufficient minimization techniques when monitoring the video or deciding what to record."). Thus, the appellate court determined that it was proper to suppress the surveillance videos under the exclusionary rule. *Id.* at 997.

## II.  Procedural Background

Taig filed this class action lawsuit in February 2021, and the case was reassigned to the undersigned in August 2021. DE 1; DE 62. Taig filed the operative Amended Complaint in October 2021. DE 72. Discovery closed in November 2021. *See* DE 73.

Taig maintains that he suffered an invasion of privacy, arrest, and prosecution as a result of the video surveillance at East Spa. DE 72 ¶ 13. He seeks to represent a class of "customers who visited [East] Spa from November 29, 2018 to January 27, 2019, who were illegally video-recorded without their knowledge or consent, criminally charged, identified in the media for their wrongful charge during the referenced time period, and publicly humiliated in the media as being involved."[1]

---

[1] Taig's motion to certify the class and to appoint a class representative and class counsel remains pending. *See* DE 81.

*Id.* ¶ 14.  He raises three counts under 42 U.S.C. § 1983.  Count I is against Vero Beach and the Individual Defendants for search and seizure in violation of the Fourth Amendment.  Count II is against Vero Beach for failure to train and supervise.  Count III is against the Individual Defendants for failure to train and supervise.  Vero Beach and the Individual Defendants now move to dismiss the Amended Complaint on various grounds.

### III.     Standard of Review

A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.*  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017).  The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019).  "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of

the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

## IV.   Analysis

### A. Vero Beach's Motion to Dismiss

Vero Beach argues that the claims against it in Counts I and II must be dismissed because Taig lacks standing to bring this action and because the Amended Complaint is a shotgun pleading and fails to state a claim upon which relief can be granted. With respect to the claims against Vero Beach, the Court need address only the argument that the Amended Complaint fails to state a claim.

Vero Beach argues that Taig has not pled facts demonstrating that it had a custom or policy that constituted deliberate indifference to constitutional rights, as is required to hold a municipality liable under 42 U.S.C. § 1983. As to the claim of failure to train and supervise, Vero Beach also argues that Taig has not pled facts demonstrating that it knew of a need to train or supervise and made a deliberate choice not to do so.

Taig responds that he has alleged a custom or policy through a pattern of unconstitutional conduct by law enforcement. He points to paragraphs in the Amended Complaint concerning the video surveillance at East Spa, such as that the cameras did not have the ability to be switched on or off; that the cameras recorded 24 hours a day, 7 days a week, for 60 days; and that Detective Crowley sought authorization for an additional 30 days of video surveillance despite having observed approximately 100 sex acts. *See* DE 72 ¶¶ 54-59. Taig further argues that he has alleged facts showing a need for training and supervision, again pointing to paragraphs in the Amended Complaint concerning the video surveillance at East Spa. *See id.* ¶¶ 140, 142-46, 148, 157.

Municipalities may be sued under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable solely due to the conduct of its employees. *Id.* at 691, 694 (stating that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 691, 694 (explaining that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"); *see also Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) (stating that "recovery from a municipality is limited to acts that are, property speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered" (quotation marks omitted)). Thus, to impose § 1983 liability on a municipality, a plaintiff must show that his constitutional rights were violated, that the municipality had a custom or policy that constituted deliberate indifference to the constitutional rights, and that the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom is a practice that is so settled and permanent that it takes on the force of law. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he could be said to be acting on behalf of the municipality. *Id.* It generally is necessary to show a persistent and widespread practice to demonstrate a custom or policy. *McDowell*, 392 F.3d at 1290.

A municipality may be held liable for failure to train or supervise employees when the failure evidences a deliberate indifference to the rights of inhabitants such that the failure can be thought of as a policy or custom. *Sewell*, 117 F.3d at 489-90. To establish deliberate indifference,

7

a plaintiff must show that the municipality knew of a need to train or supervise in a particular area and made a deliberate choice to take no action. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983."). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation marks omitted); *see also Gold*, 151 F.3d at 1351 (citing Eleventh Circuit precedent requiring a pattern of prior incidents of misconduct to demonstrate deliberate indifference).

Here, Taig points only to alleged misconduct of VBPD members during the East Spa investigation to justify holding Vero Beach liable under Counts I and II. *See* DE 90 at 10-15 (citing allegations in the Amended Complaint). He alleges no facts showing prior misconduct, either during video surveillance specifically or during police investigations more generally, that could demonstrate the existence of either (1) a custom of sanctioning constitutional violations that was so settled and permanent as to take on the force or law, or (2) an officially adopted or created policy sanctioning constitutional violations. Nor does Taig cite any caselaw indicating that activities during a single investigation—more precisely, during one 60-day period of video surveillance—could constitute such a persistent and widespread practice as to reach the level of a custom or policy. Taig has not pled facts demonstrating that Vero Beach had a custom or policy that could constitute deliberate indifference to his constitutional rights.

With respect to training and supervision, Taig has not alleged facts showing that Vero Beach knew of a need to train or supervise VBPD members and, with that knowledge, made a deliberate choice to take no action. Again, he relies only on the alleged misconduct during the

8

East Spa investigation to support his claim. He does not make allegations that would demonstrate a pattern of similar constitutional violations. Taig has pointed to no prior misconduct of VBPD members during other instances of video surveillance or during other investigations that could have indicated to Vero Beach that there was a need for better employee training or supervision in conducting video surveillance or in the area of searches and seizures more generally. While Taig asserts that Vero Beach was deliberately indifferent, that assertion, without factual enhancement, is conclusory. *See, e.g.*, DE 72 ¶¶ 140, 148. He has not pled facts demonstrating that Vero Beach was deliberately indifferent to a need to train or supervise its employees.

Taig argued during the Hearing that the actions of the Defendants in conducting the East Spa video surveillance were so egregious that a custom or policy sanctioning misconduct or a pattern of prior misconduct is unnecessary to hold Vero Beach liable. Hearing Tr. at 36-39. However, Taig has cited no authority to support dispensing with the requirement of a custom or policy to create municipal liability for a constitutional violation or with the requirement of a pattern of constitutional violations to create municipal liability for failure to train or supervise. As demonstrated through the caselaw cited above, the Supreme Court and the Eleventh Circuit have endorsed both requirements in binding precedent.

Consequently, Taig has failed to state a claim against Vero Beach under Counts I and II. Vero Beach's Motion to Dismiss is therefore granted, and Counts I and II are dismissed as to Vero Beach. The Court's dismissal of these claims is with prejudice for several reasons. First, a court need not give a represented party any opportunity to amend a deficient pleading where no amendment has been requested. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor

9

requested leave to amend before the district court."). Second, this case has been pending for nearly a year. The deadline to amend pleadings was in April 2021. *See* DE 12. Even several months after that deadline, the Court granted Taig's request for an opportunity to amend his Complaint. *See* DE 70. However, the grant of that request necessitated re-briefing of the motion to dismiss and class certification issues. *See id.*; DE 77. Given the posture of this case and to avoid delay, the Court declines to give Taig an additional opportunity to replead his claims against Vero Beach. Third, Taig amended his Complaint after being alerted to the deficiencies in his claims against Vero Beach through a prior Motion to Dismiss, and he did not remedy those deficiencies in the Amended Complaint. *See* DE 30. Fourth, while lack of discovery is not a justification for failing to state a claim, Taig filed the Amended Complaint after discovery was substantially complete in this matter, and thus he cannot contend that he needed discovery in order to adequately plead his claims against Vero Beach. For all of these reasons, Counts I and II are dismissed as to Vero Beach with prejudice.

### B. The Individual Defendants' Motion to Dismiss

The Individual Defendants argue that the claims against them in Counts I and III must be dismissed because Taig lacks standing to bring this action, because they are protected from liability by qualified immunity, and because the Amended Complaint is a shotgun pleading and fails to state a claim upon which relief can be granted. The Court first addresses the issue of shotgun pleading before turning to the Individual Defendants' remaining arguments.

### i. Shotgun Pleading

A shotgun pleading is a pleading that fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Vibe Micro Inc. v. Shabanets*,

878 F.3d 1291, 1295 (11th Cir. 2018). The Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-33 (11th Cir. 2015) (footnotes omitted).

The Individual Defendants' arguments implicate the third and fourth types of shotgun pleadings discussed in *Weiland*. First, the Individual Defendants argue that Count I is pled in a shotgun manner because it raises multiple causes of action within one count: "Count I combines claims for Fourth Amendment search and seizure violations with claims for Fourteenth Amendment due process violations and violations of the plaintiff's 'constitutional right to privacy.'" DE 76 at 17. Count I does make a passing reference to due process and to the right to privacy, *see* DE 72 ¶ 131, but Count I is explicitly titled "42 U.S.C. § 1983 (Fourth Amendment Violation – Search and Seizure)." Taig's counsel confirmed during the Hearing that, consistent with this title and the allegations in the Amended Complaint, Count I raises a search and seizure violation, and the references to due process and the right to privacy are only made to support that alleged violation. Hearing Tr. at 31-33; *see* DE 72 ¶ 125 (alleging that the Defendants' actions "exhibited an intentional and blatant disregard of the rights provided by the Fourth Amendment to the United States Constitution"); *id.* ¶ 130 ("The Defendants' actions, including their monitoring

11

and recording of the class members' conduct while located in a private room located on private property, deprived the class members of their rights, privileges, and immunities secured and guaranteed by the Fourth Amendment to the United States Constitution."). Count I does not comingle separate causes of action.

Second, the Individual Defendants argue that Counts I and III are pled in a shotgun manner because they fail to specify which Individual Defendants committed which alleged wrongful acts.[2] However, paragraphs 24 through 74 identify particular Individual Defendants who are alleged to have engaged in particular acts, and these paragraphs are incorporated into Counts I and III. Where the Amended Complaint makes allegations that refer to Defendants in the plural sense, those allegations can be read as being brought against the Individual Defendants collectively. The Court concludes that Counts I and III do not fail to specify which Individual Defendants are responsible for which acts. The Amended Complaint gives the Individual Defendants adequate notice of the claims and allegations raised against them, and therefore the Court will not dismiss the Amended Complaint as a shotgun pleading.

### ii. The Individual Defendants' Remaining Arguments

As to the remaining arguments that the Individual Defendants raise in their Motion to Dismiss, the Court hereby converts the Motion to Dismiss into a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d). The Court does so because Taig has attached a copious amount of evidence to the Amended Complaint and because the Individual Defendants make arguments that are not based solely on the allegations in the Amended Complaint. In

---

[2] The Individual Defendants also argue that Count III, which is brought against them for failure to train and supervise, fails to set forth their supervisory responsibilities and instead alleges in a conclusory manner that each Individual Defendant was obligated to train and supervise every other Individual Defendant. The Court views this argument as more relevant to failure-to-state-a-claim issues than to shotgun-pleading issues.

addition, because discovery closed in November 2021, this case has now reached a procedural posture that enables the parties to brief summary judgment issues in short order.

For clarity of the record, the Individual Defendants shall file a motion for summary judgment, together with a statement of material fact and attached material, in accordance with the Federal Rules of Civil Procedure, the Local Rules for the Southern District of Florida, and the Court's procedures set forth below. The Individual Defendants shall file the motion for summary judgment by **March 14, 2022**. The Individual Defendants may raise any issues on which they seek summary judgment and are not limited to the remaining issues in the Motion to Dismiss. Taig may file a response, and the Individual Defendants may file a reply, in accordance with the applicable rules.

Local Rule 56.1(a) requires a motion for summary judgment (and opposition thereto) to be accompanied by a statement of material facts. Pursuant to Local Rule 56.1(a)(2), this statement of material facts must be supported by *specific* references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the court. In the event a respondent fails to controvert a movant's supported material facts in an opposing statement of material facts, the movant's material facts will be deemed admitted. Local Rule 56.1(b). In the interest of judicial economy, in the interest of proper and careful consideration of each party's statement of material facts, and in the interest of determining matters on summary judgment on the merits, the Court hereby orders the parties to file any statement of material facts as follows:

A statement of material facts shall be a separate filing from a motion for summary judgment or a response to a motion for summary judgment.

Each material fact in the statement that requires evidentiary support shall be supported by a specific citation. This specific citation shall reference pages (and line numbers, if necessary) of

exhibits. When a material fact requires evidentiary support, a **general citation to an exhibit, without a page number or pincite, is not permitted**.

Each cited exhibit must be an attachment to the statement of material facts. By way of example, a statement of material facts may be filed in CM/ECF[3] with attachments as follows:

| Document Number: 113 | | 8 pages | 206 kb |
|---|---|---|---|
| **Attachment** | **Description** | | |
| 1 | Exhibit A - Amended Complaint | 33 pages | 1.0 mb |
| 2 | Exhibit B - ▮▮▮ Answer to Amended Complaint | 5 pages | 105 kb |
| 3 | Exhibit C - ▮▮▮ Affidavit dated 7/28/15 | 27 pages | 4.4 mb |
| 4 | Exhibit D - Part 1 - ▮▮▮ Affidavit dated 6/10/15 | 11 pages | 292 kb |
| 5 | Exhibit D - Part 2 | 33 pages | 1.1 mb |
| 6 | Exhibit D - Part 3 | 17 pages | 0.6 mb |
| 7 | Exhibit D - Part 4 | 27 pages | 7.7 mb |
| 8 | Exhibit D - Part 5 | 25 pages | 4.1 mb |

All citations in the statement of material facts must cite to the attached exhibits. For example, a citation could be to "Exhibit A, ¶ 2" or (for a deposition) "Exhibit C, p. 12 line 15" or "Exhibit C, 12:15".[4] Hypothetical unacceptable citations include the following: "Exhibit B" or "Smith Affidavit". Similarly, a party should not cite to "Smith Affidavit, pgs. 223-24" and should instead cite to "Exhibit E, Smith Affidavit, pgs. 223-24".

---

[3] The Court recognizes that pro se parties do not have control over how their filings appear in CM/ECF. Nonetheless, a pro se litigant's paper filing must comply with the requirements of this Order.
[4] The citations in this section are not intended to correspond directly to the example image of a filing in CM/ECF.

A respondent's statement of material facts must specifically respond to each statement in the movant's statement of material facts. By way of example, if a movant's statement of material facts reads as follows:

> **MOVANT'S STATEMENT OF MATERIAL FACTS**
>
> 1. Blackacre is owned by Movant. Exhibit B, ¶ 2.
>
> 2. Blackacre is currently under contract for sale. Exhibit C, pgs. 2-4.

A respondent's statement of material facts must clearly respond to each of the foregoing:

> **RESPONDENT'S STATEMENT OF DISPUTED FACTS
> IN OPPOSITION TO MOVANT'S STATEMENT OF MATERIAL
> FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS
> IN OPPOSITION TO MOVANT'S MOTION FOR SUMMARY JUDGMENT**
>
> Paragraph 1: Undisputed
>
> Paragraph 2: Disputed. The contract for sale was never executed. Exhibit A, ¶ 5.

As shown above, the first word in each response must be "disputed" or "undisputed." If a statement is disputed, the evidentiary citations supporting that dispute must be limited to evidence specific to the dispute. Additional facts that do not directly refute the disputed fact should be included in the respondent's own statement of (additional) material facts.

In the event a party fails to comply with the requirements delineated in this section, the Court may strike the deficient statement of material facts and require immediate compliance, grant an opposing party relief, or enter any other sanction that the Court deems appropriate.

### V.   Conclusion

For the foregoing reasons, Vero Beach's Motion to Dismiss [DE 78] is **GRANTED**. Counts I and II of the Amended Complaint [DE 72] are dismissed with prejudice as against Vero Beach.

The Individual Defendants' Motion to Dismiss [DE 76] is **DENIED IN PART AND CONVERTED IN PART TO A MOTION FOR SUMMARY JUDGMENT**. The Motion to Dismiss is denied as to the Individual Defendants' challenge to the Amended Complaint as a shotgun pleading. As to the remaining issues, the Court converts the Motion to Dismiss into a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d). The Individual Defendants shall file a motion for summary judgment by **March 14, 2022**, and the parties' summary judgment briefing shall comply with this Order and all applicable rules.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 15th day of February, 2022.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of record