UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-80391-RLR

KEITH TAIG, individually, and on behalf
of others similarly situated,

    Plaintiffs,

vs.

CITY OF VERO BEACH; CHIEF DAVID
CURREY, in his individual capacity; CAPTAIN
KEVIN MARTIN (RETIRED), in his individual
capacity; LIEUTENANT JOHN PEDERSEN,
in his individual capacity; DETECTIVE PHIL
HUDDY, in his individual capacity;
DETECTIVE SEAN CROWLEY, in his
individual capacity and DETECTIVE MIKE
GASBARRINI, in his individual capacity,

    Defendants.
_____/

## MOTION OF
## DEFENDANTS, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI, FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1 of the United States District Court for the Southern District of Florida, the Defendants, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI, file and serve their Motion for Summary Judgment and Incorporated Memorandum of Law. The Defendants show that the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file in this case establish that there is no genuine issue as to any material fact and that

they are entitled to a judgment in their favor as a matter of law. The grounds for this Motion are set forth with more particularity as follows:

### Relevant Procedural History

1. This case is a civil action for damages arising out of a multi-jurisdictional investigation into suspected prostitution, racketeering and human trafficking activities at the East Spa in Vero Beach, Florida. [D.E. 72, ¶¶ 23, 33, 34]

2. The Plaintiff claims that the Defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution by conducting covert, non-audio video surveillance at the East Spa. [D.E. 72]

3. Count I of the Amended Complaint purports to set forth claims against all Defendants under 42 USC 1983 for violation of the Plaintiff's Fourth Amendment rights. [D.E. 72, ¶¶ 128-138]

4. Count II of the Amended Complaint purported to assert claims against the City of Vero Beach under 42 USC 1983 for violation of the Plaintiff's Fourth Amendment rights arising out of the city's alleged failure to train and supervise the defendant officers. [D.E. 72, ¶¶ 139-158]

5. Count III of the Amended Complaint purports to assert claims against the individual Defendants under 42 USC 1983 for violation of the Plaintiff's Fourth Amendment rights arising out of the Defendants' alleged failure to train and supervise. [D.E. 72, ¶¶ 159-168]

6. On October 21, 2021, the Defendants, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI filed a Motion to Dismiss the Plaintiff's Amended Complaint. [D.E. 76]

7. On October 22, 2021, the CITY OF VERO BEACH filed a Motion to Dismiss the

Plaintiff's Amended Complaint. [D.E. 78]

8. On February 15, 2022, this Court entered its order on the Defendants' motions to dismiss. In that order, the court granted the CITY OF VERO BEACH's Motion to Dismiss and dismissed the Plaintiff's claims against the CITY OF VERO BEACH with prejudice. Additionally, the Court denied the individual defendant officers' Motion to Dismiss the Amended Complaint as a shotgun pleading. Finally, the court converted the individual defendant officers' Motion to Dismiss into a Motion for Summary Judgment and directed the individual defendant officers to file a Motion for Summary Judgment on or before March 14, 2022. [D.E. 98]

9. The Defendants, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI, now move for summary judgment in their favor and against the Plaintiff on all claims.

## Memorandum of Law

**A.     Summary Judgment Standard.**

Rule 56 of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered…if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c). "The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial." *Jeffrey v. Sarasota White Sox*, 64 F. 3d 590, 593 (11th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). The Court must view the evidence in the light most favorable to the non-movant and resolve all doubts in the non-movant's favor. *Id.* at 594 (citations omitted). However, "the 'mere possibility that a factual dispute may exist, without more, is not

sufficient to overcome a convincing presentation by the party seeking summary judgment.'" *Wells v. The Prudential Ins. Co. of America*, 13 F. Supp. 2d 1326, 1327 (M.D. Fla. 1998) (citations omitted). The non-movant must then identify specific evidence, if any, which shows a genuine issue of material fact, *id.*, upon which "'a reasonable jury could return a verdict for the nonmoving party.'" *Jeffrey,* 64 F. 3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "When a party's response consists of nothing "more than a repetition of conclusional allegations,' summary judgment is not only proper but required." *Wells*, 13 F. Supp. 2d at 1327 (internal citations omitted).

    **B.**    **Taig Lacks Standing to Bring this Action.**

The Amended Complaint purports to assert Fourth Amendment claims against the Defendants arising out of court authorized covert video surveillance of massage parlor patrons engaged in acts of prostitution. During the investigation, the City of Vero officers observed 145 customers in the massage rooms. [D.E. 72, p. 315; D.E. 100-1, ¶ 27; D.E. 100-2, ¶ 28] Of those 145 customers, 142 engaged in sex acts with a spa employee. [D.E. 72, p. 315; D.E. 100-1, ¶ 27; D.E. 100-2, ¶ 28] Taig was one of those 142 who were observed engaging in a sex act with a spa employee. [D.E. 72, p. 94, 95; D.E. 100-2, ¶¶ 23-27]

The Supreme Court long has recognized that the Fourth Amendment's guarantee of freedom from warrantless searches and seizures only protects an individual in those places where he can demonstrate a reasonable expectation of privacy against government intrusion. *See Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). Such a place can include commercial property such as an office or hotel room. *See Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). Fourth Amendment rights, however, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have

standing to challenge the validity of a government search. *See Rakas v. Illinois,* 439 U.S. 128, 133–34, 143, 99 S.Ct. 421, 425, 430, 58 L.Ed.2d 387 (1978); *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). Therefore, application of this right "depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotation marks and citations omitted).

A party challenging the legality of a search bears the burden of showing he has standing by proving he possessed an objectively reasonable expectation of privacy in the area searched or items seized. *See Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir.2010) (citations omitted); *United States v. Baron–Mantilla*, 743 F.2d 868, 870 (11th Cir.1984) (citation omitted). To establish a reasonable expectation of privacy, the defendant must manifest a subjective expectation of privacy in the items searched or seized, and society must be prepared to recognize that expectation as legitimate or objectively reasonable. *Rehberg*, 611 F.3d at 842 (citation omitted); *United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir.2002) (citation omitted). In other words, a defendant must establish both a subjective and an objective expectation of privacy. *United States v. Segura–Baltazar*, 448 F.3d 1281, 1286 (11th Cir.2006) (citation omitted). The subjective prong is a factual inquiry, *United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir.1987) (citations and footnote call number omitted), requiring a person exhibit an actual expectation of privacy, *United States v. King*, 509 F.3d 1338, 1341 (11th Cir.2007) (citation omitted). The objective prong is a question of law. *See McKennon*, 814 F.2d at 1543 (citations omitted).

Determining the legitimacy of a privacy expectation entails a balancing of interests; no single factor is determinative. *United States v. McCullough*, No. 1:11–CR–136–JEC/AJB–01, 2012 WL 11799871, at *4 (N.D.Ga. Oct. 9, 2012) (citation omitted). Factors courts generally

consider include property ownership, whether the defendant has a possessory interest in the things seized or place searched, whether the defendant has the right to exclude others from the place, whether he has exhibited a subjective expectation the place would remain free from governmental invasion, whether he took precautions to maintain his privacy, and whether he was legitimately on the premises. *Id.* (citing *United States v. Salvucci*, 448 U.S. 83, 92, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *United States v. Pitt*, 717 F.2d 1334, 1337 (11th Cir.1983); *United States v. Haydel*, 649 F.2d 1152, 1154–55 (5th Cir. Unit A 1981)).

Here, Taig does not allege that he owned, leased, operated or controlled the East Spa premises. Taig does not allege how long he was at the East Spa when he was engaging in the act of prostitution. Taig does not allege that any assurances that he received from East Spa employees assuring him that his privacy would be protected. In fact, Taig does not explain how or why he had a subjective expectation of privacy while engaging in an act of prostitution. To the contrary, Taig admits that he visited the East Spa on December 27, 2018 and engaged in sex acts with an East Spa employee. [D.E. 100-5, page 35, lines 4-6; page 36, lines 19-21] Specifically, Taig performed oral sex on the masseuse and received a "hand job" from the masseuse. [D.E. 100-5, page 35, lines 4-6; page 36, lines 19-21] He then paid her a $100 "tip." [D.E. 100-5, page 37, lines 10-18] This is the kind of conduct that would confer Taig standing to seek protection of the Fourth Amendment.

The East Spa was not owned, operated or controlled by Taig. Taig's presence on the property was transient in nature and solely related to engaging in an act of prostitution. The U.S. Supreme Court has held that a person lacks a reasonable expectation of privacy where present in another's residence for a short period of time. *Minnesota v. Carter*, 525 U.S. 83, 86 (1998). Likewise, the Eleventh Circuit has held that "[A] person who is merely present in another's

dwelling to engage in a purely commercial transaction such as narcotics trafficking, who is on the premises for a relatively short period of time, and who does not have a previous connection with the householder, has no legitimate expectation of privacy in the premises." *Mays v. Davenport*, 560 F. App'x 958, 963 (11th Cir. 2014).

Taig's conduct in this case is similar to that of the defendant in *Davenport*. In *Davenport,* a prisoner filed a habeas corpus petition challenging his murder conviction. In his petition, the defendant claimed that his conviction was invalid because officers had entered a hotel room to arrest him without a warrant. The Eleventh Circuit rejected the defendant's argument, holding that the defendant had no reasonable expectation of privacy in the hotel room. In doing so, the court noted that the defendant was not the registered occupant of the room but was instead merely present in another guest's room at the time of the arrest and search. Moreover, the defendant was a stranger to the occupants of the room and was not an invited overnight guest of the room's registered occupants. Instead, the defendant was simply in the room for the purpose of purchasing and smoking crack cocaine, which the court described as a "commercial transaction."

Here, Taig was not the owner or lessor of the premises. He was not an employee of the East Spa. He was not an overnight guest. There is no allegation that he had preexisting relationship with his masseuse. Despite the lack of a pre-existing relationship with the masseuse, Taig fully anticipated to become unclothed as part of the massage. This doesn't come remotely close to demonstrating a subjective expectation of privacy.

Taig also fails to demonstrate an object of expectation of privacy. As indicated above, to establish a reasonable expectation of privacy, the defendant must manifest a subjective expectation of privacy in the items searched or seized, and society must be prepared to recognize that expectation as legitimate or objectively reasonable. *Rehberg*, 611 F.3d at 842 (citation omitted);

*United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir.2002) (citation omitted). Prostitution is still illegal in the state of Florida. Fla. Stat. § 796.07. Considering the criminal nature of prostitution, there is nothing to suggest that society has accepted an expectation of privacy in engaging in the criminal act of prostitution as legitimate or objectively reasonable. Therefore, Taig is without standing to avail himself from the protections of the Fourth Amendment.

The United States District Court for the Southern District of Florida recently addressed the issue of standing in a virtually identical case arising out of a similar spa investigation in Martin County. On September 2, 2021, Judge K. Michael Moore entered summary judgment in favor of the defendants in the case of *Daniel F. Cash, Plaintiff, v. William D. Snyder, et al., Defendants*, Case No. 2:20-cv-14305-KMM (S.D. Fla., September 2, 2021). In *Cash*, the plaintiff pursued claims for federal constitutional claims and state tort claims arising out of covert video surveillance of suspected prostitution at a massage parlor. The plaintiff claimed that the law enforcement activities violated his constitutional rights under the Fourth and Fourteenth Amendments. Judge Moore rejected the Fourth Amendment claim, finding that the plaintiff, a spa customer, did not have standing to pursue a Fourth Amendment claim. In doing so, Judge Moore noted that Cash had no preexisting relationship with his masseuse, was not an overnight guest of the spa, and gave his masseuse money after his massage. Consequently, Cash had no reasonable expectation of privacy and could not assert the Fourth Amendment claim.

Taig's situation is identical that of the plaintiff in Cash. Like Cash, Taig had no pre-existing relationship with the masseuse. Taig was not an overnight guest of the spa. Taig engaged sex acts with a woman he had never met and whose name he did not know. He then gave her a $100 "tip" after engaging in the sex acts. Consequently, Taig likewise had no reasonable expectation of privacy and should not be permitted to assert a Fourth Amendment claim.

### C. The Defendants are Entitled to Qualified Immunity with Respect to the Claims Set Forth in Count I.

Furthermore, even assuming *arguendo* that Taig has standing to raise a claim, the Defendants are still entitled to dismissal based on qualified immunity. Qualified immunity completely "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).

The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted). Indeed, as the Supreme Court recently held in *Scott v. Harris*, "[q]ualified immunity is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" 550 U.S. 372, 376 n.2 (2007) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, qualified immunity should be resolved "at the earliest possible stage of litigation." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

To be entitled to qualified immunity, "the public official must show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003) (citing *Lee*, 284 F.3d at 1194). An official act within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Here, it is undisputed that the Defendants were acting within their discretionary

authority as police officers with the City of Vero Beach during East Spa investigation. [D.E. 72, ¶¶ 7, 8, 9, 10, 11, 12]

Because it is undisputed that the Defendants were acting within the scope of their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. In analyzing this burden, it is important to recognize that "[q]ualified immunity is the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998). In addition, in this Circuit "[w]e generally accord … official conduct a presumption of legitimacy." *Dalrymple*, 334 F.3d at 996 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164,179 (1991)).

Taig must show that binding case law existed at the time of the incident which would have put a reasonable officer under similar circumstances on notice that his alleged actions violated "clearly established" law. *See Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999); *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003); *Marsh*, 268 F.3d at 1031 ("Because fair and clear notice to government officials is the cornerstone of qualified immunity, courts must diligently analyze the preexisting case law to determine whether it really did provide plain notice to every reasonable government official that the pertinent conduct, in the specific circumstances, would clearly violate preexisting federal law.")

A right may be "clearly established" for qualified immunity purposes in one of three ways: first, case law with indistinguishable facts clearly establishes the constitutional right; second, a broad statement of principle within the Constitution, statute, or case law clearly establishes the constitutional right; or third, the conduct was so egregious that the constitutional right was clearly violated, even in the total absence of case law. *See*, e.g., *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009); *see also Snider v. Jefferson State Comm. Coll.*, 344 F.3d

1325, 1328 (11th Cir. 2003) ("That the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary. But in the light of preexisting law, the unlawfulness must be apparent: plain, clear, obvious").

In sum, "[a] government agent is entitled to immunity unless his act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg v. Paulk*, 598 F.3d 1268, 1277 (11th Cir. 2010) (citation omitted).  Rights are "clearly established" in the Eleventh Circuit pursuant to decisions of the Supreme Court, the Eleventh Circuit, or the highest court in the state. *Thomas*, 323 F.3d at 953.

The application of qualified immunity to the Defendants' conduct in this case is supported by Judge Moore's findings in *Daniel F. Cash, Plaintiff, v. William D. Snyder, et al., Defendants*, Case No. 2:20-cv-14305-KMM (S.D. Fla., September 2, 2021) and *Thompson v. Flowers*, Case No. 2:20-cv-14305-KMM, 2021 WL 4707611 (S.D. Fla. September 4, 2021) In *Cash*, the plaintiff pursued claims for federal constitutional claims and state tort claims arising out of covert video surveillance of suspected prostitution at a massage parlor. The plaintiff claimed that the law enforcement activities violated his constitutional rights under the Fourth and Fourteenth Amendments. Addressing the issue of qualified immunity, Judge Moore noted that the defendant officers were entitled to qualified immunity with respect to any "misstatements or omissions" in the warrant affidavit as the misstatements or omissions were not material to the issues of the surveillance order. Likewise, Judge Moore found that the defendant officers were entitled to qualified immunity with respect to the surveillance order's minimization provisions. In doing so, Judge Moore noted that minimization requirements for covert, non-audio video surveillance are not clearly established law under applicable U.S. Supreme Court, Eleventh Circuit, and Florida

Supreme Court precedent. Consequently, there was no clearly established right with respect to minimization requirements for non-audio covert video surveillance.

Two days later, Judge Moore reached the identical result while granting a motion to dismiss in *Flowers*, once again holding that the defendant officers were entitled to qualified immunity despite the failure to comply with the "minimization requirements" of the order for covert video surveillance.

Here, as in *Cash* and *Flowers*, at the time of the East Spa investigation, there were no cases from the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court, establishing that the use of silent, covert video surveillance pursuant to a warrant violated a clearly established constitutional right. Likewise, there were no cases from the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court, imposing Title III minimization requirements on silent, covert video surveillance of criminal activity pursuant to a warrant. Therefore, the Defendants are entitled to qualified immunity because Taig cannot demonstrate that there is a clearly established constitutional right with respect to minimization requirements for video surveillance that is controlling in the Southern District of Florida.

   **D.**  **The East Spa Investigation Did Not Violate Minimization Requirements.**

Title III does not apply to silent, non-audio video surveillance. Courts discussing the minimization requirements of Title III have noted that purpose of the minimization requirement is to ensure that intrusions into the privacy of those whose communications are intercepted are held to a minimum, consistent with the purposes of the wiretap. *United States v. Hyde,* 574 F.2d 856, 869 (5th Cir.1978). The minimization effort must be objectively reasonable in light of the circumstances confronting the interceptor. "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a

manner as to 'minimize' the interception of such conversations." *Scott v. United States,* 436 U.S. 128, 140, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). A "test of reasonableness" is applied to the particular facts of each case. *Id.* at 139–40, 98 S.Ct. 1717; *see also Hyde,* 574 F.2d at 869.

The Constitution does not prescribe any particular method for minimization. Federal courts have recognized and approved multiple methods. One method is extrinsic minimization, in which law enforcement limits the number of hours or days they monitor. *See United States v. Chavez*, 533 F.2d 491, 493 (9th Cir. 1976) (stating that "one of the most obvious ways to minimize is to use the tap only for a short time.") Another method is intrinsic minimization, where the monitor makes the decision to discontinue monitoring after deciding that the activity observed or heard is not relevant to the purpose of the investigation. *See United States v. Daly*, 535 F.2d 434, 442 at ftn. 8 (8th Cir. 1976). Still another method calls for monitoring and recording all communications, but only transcribing those that are pertinent to the investigation. *See Bynum v. United States*, 475 F.2d 832, 837 (2nd Cir. 1973).

The order authorizing silent, covert video surveillance of the East Spa instructed law enforcement to "take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit." The cameras provided by the United States Department of Homeland Security did not permit Vero Beach officers to turn off the cameras. Instead, the cameras ran 24 hours a day, seven days a week. Consequently, the only minimization technique available to the officers was extrinsic minimization. The Vero Beach officers did this by limiting the hours during which the cameras were monitored, limiting the people authorized to monitor the cameras and securing the hard drives under lock and key in the police evidence room. [D.E. 100-1, ¶ 22, 23, 26, 27; D.E. 100-2, ¶¶ 19, 20, 22] City of Vero Beach law enforcement only monitored the massage rooms for 30 of the 60 possible days permitted for video surveillance. [D.E. 100-4, p. 82,

lines 5-8] Additionally, the Vero Beach officers limited the number of hours per day that they monitor the video feeds [D.E. 100-1, ¶¶ 22, 23, 26; D.E. 100-2, ¶¶ 19, 20, 22] During that time, 145 massages were monitored. [D.E. 100-1, ¶ 27; D.E. 100-2, ¶ 28] Of the 145 massages that were monitored, 142 involved acts of prostitution. D.E. 100-1, ¶ 27; D.E. 100-2, ¶ 28]

There are variety of ways to conduct minimization during electronic surveillance. Extrinsic minimization limits the time period during which monitoring is conducted. This was done by the Vero Beach officers, as detectives Crowley and Gasbarrini only monitored the cameras from 8:00 a.m. to 11:00 p.m. [D.E. 100-1, ¶¶ 22, 23, 26; D.E. 100-2, ¶¶ 19, 20, 22] They also limited access to the video monitors and kept the hard drives under lock and key in the evidence locker. [D.E. 100-1, ¶¶ 22, 23, 26; D.E. 100-2, ¶¶ 19, 20, 22; D.E. 100-3, page 60, line 7-page 62, line 20] Of the 145 massages that were monitored, 142 involved acts of prostitution. D.E. 100-1, ¶ 27; D.E. 100-2, ¶ 28] Given that only one customer out of 145 was not engaged in acts of prostitution, the officers did a more than reasonable job of minimizing the invasion of privacy of parties "… not engaged in the unlawful acts set forth in the affidavit."

Finally, is abundantly clear that there was no obligation to minimize the surveillance of Taig on December 27, 2018. The minimization requirements of the order obligated the officers to "… take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit." Taig was engaged in a commercial sex transaction with an East Spa employee. Therefore, Taig was clearly a party engaged in the unlawful acts set forth in the affidavit and there was no obligation to minimize the video surveillance of Taig and the "masseuse" on December 27, 2018.

    **E.**    **Count III Fails to Support a Claim for Failure to Train/Supervise against These Defendants.**

Count III purports to impose Fourth Amendment liability on the individual defendant officers for "failure to train/supervise" the other individual defendants. In essence, this count is duplicative of Count I in that it seeks to impose liability on this defendant for "continuous filming and recording of all the Spa patrons…" Count III further alleges that the failure to train and/or supervise led to and because the "gratuitous recording of Plaintiff.[1]"

In the Eleventh Circuit, supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994)). Rather, "[s]upervisors will be held individually liable only if (1) the supervisor personally participates in the underlying violation; or (2) there is a causal connection between the actions of the supervisor and that violation." *Steen v. City of Pensacola,* 809 F.Supp.2d 1342, 1347 (N.D.Fla.2011).

Supervisory liability under Section 1983 involves the same qualified immunity analysis used for personal participation claims. First, the Court must determine if there was a violation of a constitutional right and then whether those rights were clearly established. Typically, "supervisory officials are not [ ] liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted); accord *Stallworth v. Wilkins*, 802 F. App'x 435 (11th Cir. 2020). Supervisory liability occurs when the defendant "personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper v. Lawrence Cnty.*, 592 F.3d 1227 at 1236 (11th Cir. 2010).

---

[1] Plaintiff is one of 142 spa patrons videoed participating in an illicit sex act at the East Spa.

To establish a causal connection, Plaintiff must show either: (1) "a history of widespread abuse put [ ] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, at 1234-45 (11th Cir. 2003) (internal quotation marks omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1269 (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." <u>Cottone</u>, at 1360-61 (quoting *Gonzalez*, 325 F.3d at 1234) (alterations in original).

**No Supervisory Liability in the Absence of an Underlying Constitutional Violation**

As a preliminary matter, when it has been found that subordinates did not participate in unconstitutional conduct, it is improper for supervisors to be held liable. *See Mitchell v. McKeithen*, 672 F. App'x 900, 903-904 (11th Cir. 2016) (finding supervisor cannot be held liable when court found subordinate did not violate constitutional rights). Here, because Taig has not shown any constitutional violations sufficient to overcome the individual defendant officers' qualified immunity, there is no unconstitutional conduct for which to hold the individual defendant officers liable for failure to train or supervise.

### No History of Widespread Abuse

Moreover, as this was the first covert video surveillance operation for the City of Vero Beach, there is no history of widespread abuse to put any of the alleged supervisors on notice of the need to correct any alleged constitutional deprivation, resulting in a failure to do so. A history of widespread abuse must be obvious, flagrant, rampant and of continued duration in order to provide meaningful notice. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). This case does not contain any evidence of widespread abuse must be obvious, flagrant, rampant and of continued duration. Consequently, Taig cannot rely upon a "history of widespread abuse" to establish supervisory liability.

### No Evidence of a Supervisor's Custom or Policy Resulting in Deliberate Indifference to Constitutional Rights

There is no evidence of a supervisor's custom or policy resulting in deliberate indifference to constitutional rights. Finally, there are no facts supporting an inference any the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

### No Violation of Clearly Established Law

Here, the underlying constitutional violation claimed by Taig is the surreptitious video recording of Taig's activities at the East Spa. As indicated above, Taig lacks standing to assert a claim for violation of his Fourth Amendment right. Moreover, even assuming, for the sake of argument, that the surreptitious video-only recordings carried out by the Vero Beach officers rose to the level of a Fourth Amendment violation, the individual defendant officers are entitled to qualified immunity because there is no clearly established law with respect to minimization requirements for covert, video-only surveillance of illegal activities. In *City of Escondido v. Emmons*, the Supreme Court emphatically instructed lower courts "not to define clearly established

law at a high level of generality." —— U.S. ——, 139 S. Ct. 500, 503, 202 L.Ed.2d 455 (2019). In other words, the "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018). Here, to deny the individual defendant officers qualified immunity, the Court must conclude that they were on notice that a reliance upon extrinsic minimization in the context of covert, video-only surveillance was a violation of clearly established law that could expose them to personal liability. The law does not justify this conclusion. There are no United States Supreme Court, Eleventh Circuit Court of Appeals or Florida Supreme Court cases that impose any minimization requirements for covert, video-only surveillance. Consequently, there was no way for the individual defendant officers to know that reliance upon extrinsic minimization could expose them to personal liability. Therefore, the individual Vero Beach officers are entitled to qualified immunity.

## Conclusion

The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the the Defendants, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI entitled to a judgment as a matter of law. Taig was on the premises for the purposes of engaging in a commercial sex act with a "masseuse." The officers had obtained a warrant permitting them to go onto the premises to install a covert video-only surveillance system. The Vero Beach officers did not have the ability to remotely turn the covert video-only surveillance cameras on or off. Consequently, they sought to "minimize" the intrusion through extrinsic minimization. Because there was no clearly established law with

respect to minimization requirements for covert, video-only surveillance of illegal activities, the Defendants, CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI, are entitled to summary judgment in their favor and against Keith Taig.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 14th day of March, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record including Gerald F. Richman, Esq., Fisher Potter Hodas, 515 North Flagler Drive, Suite 800, West Palm Beach, FL 33401, E-Mail: gerry@fphlegal.com; Gail Bradford, Esq., Dean, Ringers, Morgan & Lawton, P.A., 201 East Pine Street, Suite 1200, Orlando, Florida 32801, E-Mail: gbradford@drml-law.com; William E. Lawton, Esq., Dean, Ringers, Morgan & Lawton, P.A., 201 East Pine Street, Suite 1200, Orlando, Florida 32801, E-Mail: wlawton@drml-law.com; and Alyssa Joy Flood, Esq., Dean, Ringers, Morgan & Lawton, P.A., 201 East Pine Street, Suite 1200, Orlando, Florida 32801, E-Mail: aflood@drml-law.com.

*/s/ Robert E. Bonner*
**ROBERT E. BONNER, ESQUIRE**
Florida Bar No.: 327875
Meier, Bonner, Muszynski,
   O'Dell & Harvey, PA.
260 Wekiva Springs Road,   Suite 2000
Longwood, Florida  32779
Telephone:   (407) 872-7774
Facsimile:   (407) 872-7997
E-Mail:   reb@fltrialteam.com
Counsel for Defendants,

CHIEF DAVID CURREY, CAPTAIN KEVIN MARTIN (RETIRED), LIEUTENANT JOHN PEDERSEN, DETECTIVE PHIL HUDDY, DETECTIVE SEAN CROWLEY, and DETECTIVE MIKE GASBARRINI